**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

**ERIC WENNINGER**

Plaintiff,

v.

Hon. Brandy R. McMillion
Mag Judge: Kimberly G. Altman
Case No.: 26-11370

**THE LINCOLN NATIONAL LIFE INSURANCE COMPANY**,
an Indiana corporation,

Defendant.
_____________________________________________________/

**PARTIES' JOINT RULE(S) 16.1 & 26(f) PLAN**

Pursuant to this Court's June 26, 2026 Order to Attend Telephonic Scheduling Conference and Notice of Requirements for Submission of Discovery Plan (ECF No. 7, PageID 168-171), the above-named Parties submit their Rule(s) 16.1 and 26(f) Plan for the Court's review and consideration.

A telephonic Rule 16 Scheduling Conference is scheduled for July 29, 2026 @ 11:30 a.m. Appearing for the parties as counsel will be Ilana S. Wilenkin on Plaintiff’s behalf and Iwana Rademaekers on Defendant’s behalf.

1) **Related Cases:**

There are no related cases.

2) **Jurisdictional Basis:**

This Court's jurisdiction exists under the Employee Retirement Income Security Act of 1974 ("ERISA"), specifically, 29 U.S.C. §§ 1132(e)(1) and 1132(f).

3) **Plaintiff's Factual Summary:**

This is a claim seeking disability income benefits, a total disability waiver of life insurance premium/extended death benefit, and other damages outlined in Mr. Wenninger's 4/27/26 Complaint. (ECF No. 1, PageID 1-63). Mr. Wenninger brought his claim(s) pursuant to ERISA § 502(a)(1)(B) - 29 U.S.C. § 1132(a)(1)(B).

Mr. Wenninger is 60-years-of-age. He began working for Fisher & Company during July 2018 as a Senior Supplier Quality Engineer. As an employment benefit, Fisher & Company provided Mr. Wenninger with, among other coverages, long-term disability ("LTD") insurance and life insurance that allowed for a total disability premium waiver/extended death benefit. Lincoln Financial ("LF") underwrites the coverages and acts

as claims' administrator. Fisher & Company is the Plan sponsor and administrator.

Around September 2022, Mr. Wenninger began experiencing increasingly debilitating back and radicular pain which eventually led him to stop working in any capacity on 1/19/23. Mr. Wenninger has not engaged in any substantial, gainful activity since that date, and the Social Security Administration determined that he became disabled under its rules on 1/20/23, with a $2,951.00 monthly benefit payable beginning 7/1/23. Mr. Wenninger reimbursed LF its $22,785.31 overpayment on 2/19/25 via electronic payment. (Claim File; overpayment note 18).

Shortly after his last day of work, Mr. Wenninger applied to LF to begin receiving LTD benefits and a total disability life/extended death benefit premium waiver. LF approved Mr. Wenninger's claim for own-occupation LTD benefits, effective 7/19/23[1]. However, it denied Mr. Wenninger's extended death benefit premium waiver claim on 10/26/23. Based on LF's representations, Mr. Wenninger appealed this denial on 1/2/26.

[1] LF incorrectly calculated Mr. Wenninger's monthly LTD benefit at his claim's inception, which led to overpayment and tax issues that are detailed toward the end of his Complaint.

Throughout Mr. Wenninger's own-occupation LTD claim, LF requested updates from his pain management physician, Michael Bonnette, M.D., who consistently supported disability under both Policy definitions. Dr. Bonnette completed many forms for LF that requested, among other information, Mr. Wenninger's residual functional capacity to perform sedentary, light, medium duty, etc. LF's forms, however, did not provide a less-than-sedentary option, which Dr. Bonnette would have selected. Because he thought he had to select one of the forms' options, he checked sedentary work capacity even though he did not believe that Mr. Wenninger was capable of functioning at that level. Dr. Bonnette explained his thought process and reasoning in his 8/25/25 narrative report. (Ex. 10 of 1/2/26 Administrative Appeal).

During approximately early 2025, LF initiated an any-occupation review to determine whether Mr. Wenninger would be unable to perform, with reasonable continuity, the material and substantial duties of any occupation beginning 7/19/25. To that end, it enlisted Kevin Kohan, D.O. (PM&R) to perform a peer/records review, who on 3/3/25, opined in relevant part:

> The claimant is treated by Dr. Michael Bonnette from 10/02/2024 through 02/05/2025 with physical examinations revealing 5/5 strength of the upper extremities except left shoulder abduction at 4/5 strength, 5/5 strength of the lower extremities, sensation intact to light touch, negative Hoffman's test, normal gait, **positive Hawkins test on the left**, **positive empty can test on the left, mildly positive lumbar facet loading test, positive straight leg raise test on the right, limited range of motion of the lumbar spine, and pain**.
>
> The treating provider had placed the claimant on restrictions of lifting no greater than 10 pounds, no bending, no twisting, no lifting, and no prolonged sitting or standing for longer than 30 minutes at a time from 08/01/2024 through 08/01/2025. The treating provider's plan for the return to work was to continue medications, continue the home exercise program, and potentially undergo a spinal cord stimulator trial . . .
>
> The medical records would support these restrictions and limitations recommended by the treating provider for the timeframe in question with the exception of the timeframe as it would be appropriate for the claimant to be reassessed 12 weeks from the date of this review.

(Claim File). (emphasis added).

On 3/6/25, Dr. Bonnette responded to Dr. Kohan's report by stating:

> [Mr. Wenninger] was previously seen by Dr. Polina who recommended therapy and performed multiple injections with minimal relief in symptoms. He then underwent a discectomy/hemilaminectomy with Dr. D'Andrea on June 26, 2023. Unfortunately, he did not receive significant benefit with this surgery. In November of 2023, he underwent transforaminal epidural injections at the L3-4 and L4-5 levels on the right with only mild benefit in symptoms. In January of 2024, he underwent an interlaminar epidural injection with

> less improvement than the transforaminal injections. The patient attempted working with PT in early 2024 with no significant improvement. His low back and radicular symptoms slowly worsened throughout 2024 and required treatment of his symptoms with hydrocodone-acetaminophen, pregabalin, and tizanidine. We recommended a spinal cord stimulator trial and implant but decided against this treatment. He consulted with Dr. Fiani (Neurosurgery) who recommended surgical intervention, but he decided not to move forward with this. He consulted with Dr. Moosavi regarding regenerative treatments but has not made a decision on moving forward with these treatments. The patient's symptoms have resulted in him not being able to work. He cannot stand or walk for more than 30 minutes at a time without the pain becoming unbearable.

(Ex. 4 of 1/2/26 Administrative Appeal).

After reviewing Dr. Bonnette's 3/6/25 opinions, on 3/17/25, Dr. Kohan issued an addendum to his 3/3/25 report in which he reiterated his previous opinions and further stated that Mr. Wenninger was physically able to sit for up to one hour at a time for a total of eight hours per day with the ability to alter position as needed. (Ex. 5 of 1/2/26 Administrative Appeal).

LF conducted a Transferrable Skills Analysis based on Dr. Kohan's opinions and ultimately denied Mr. Wenninger's claim on 3/19/25 effective 7/19/25. Mr. Wenninger appealed LF's LTD and extended death benefit denials on 1/2/26. He provided historical and updated medical evidence as

well as functional evidence supporting total and permanent disability, a limited selection of which follows:

On **6/26/23**, Dr. D'Andrea performed a L3-4 right-sided far lateral microdiscectomy.

A **9/5/23** EMG indicated:

> This is an **abnormal EMG/NCS of the bilateral lower extremities**.
>
> There is Electrodiagnostic **evidence suggestive of a chronic right L3 radiculopathy**.
>
> There were **also florid denervation potentials in the right L4-S1 paraspinals**; unclear significance given recent lumbar surgery and no acute findings in the right lower extremity.
>
> Finally, the right gastroc with small, non-discrete MUAP. The MUAPs, though, did not appear myopathic.

(Ex. 1 of 1/2/26 Administrative Appeal).

On **7/23/24**, Mr. Wenninger presented to Brian Fiani, D.O. for a neurosurgical consult. Dr. Fiani noted that "on MRI of the lumbar spine there is **L3-L4 L4-L5 right-sided eccentric far lateral disc herniations with severe nerve compression**." (Claim File). (emphasis added).

Mr. Wenninger presented to Michigan in Motion on **7/7/25** for a Functional Capacity Evaluation:

> **Consistency of Effort**
> During objective functional testing, Mr. Wenninger demonstrated consistent effort throughout 100.0% of this test which would suggest Mr. Wenninger put forth full and consistent biomechanical and evidence based effort during this evaluation.
>
> **Reliability of Pain Ratings**
> Throughout objective functional testing, Mr. Wenninger reported reliable pain ratings 83.3% of the time which would suggest that pain could have been considered a limiting factor during functional testing.
>
> **Summary / Impression**
> Mr. Wenninger is unable to work full time even in a Sedentary capacity. The unskilled sedentary occupational base is significantly eroded because he is unable to walk occasionally, stand for 1 hour and 45 minutes, sit for approximately 6 hours of an 8-hour workday, and sit at least 2 hours at a time.

(Ex. 6 of 1/2/26 Administrative Appeal).

On **8/25/25**, Dr. Bonnette prepared another narrative report on Mr. Wenninger's behalf:

> After this Functional Capacity Evaluation, he was again evaluated in the clinic on 8/25/2025 and reviewed his recent MRI which was similar to his prior imaging in 2023. His symptoms remained consistent with his prior evaluations.
>
> Due to his continued symptoms without significant improvement with multiple conservative and interventional treatments as well as the new functional capacity evaluation, I find the patient's prognosis for any significant improvement to be poor.

> In multiple prior restriction forms provided by Lincoln Financial Group, I noted the patient to be able to perform Sedentary work. This form asked me to check a box to indicate what my patient is capable of on a full time basis and I checked the box next to Sedentary. **Unfortunately, this form does not allow for any options of functioning less than Sedentary, so I checked the lowest level of functioning provided on this form, but if there were a lower level of function (i.e. patient cannot perform Sedentary work), I would have checked that box**.
>
> I agree with the results of the functional capacity evaluation, in that the patient cannot work at a Sedentary level on a full-time basis. Due to these findings and his persistent, continued symptoms over the last 2 years of evaluations, it is my opinion that the patient shall, more likely than not, remain totally and permanently disabled.

(Ex. 10 of 1/2/26 Administrative Appeal). (emphasis added).

LF then sent Mr. Wenninger's appeal and records to Solomon Rojhani, M.D. (PM&R) for review. Among other failures, Dr. Rojhani ignored the FCE, the plethora of supporting objective medical evidence, and Dr. Bonnette's repeated opinions:

> No, the medical records do not support that the claimant be restricted or limited from obtaining any type of employment at the present time. **The records demonstrate impairment due to lumbar radiculopathy, low back pain, and chronic pain syndrom**e, resulting in significant limitations for tasks involving prolonged standing or walking, heavy lifting, pushing/pulling, and repetitive trunk movements. **While significant**

> **restrictions are warranted, the evidence does not indicate total incapacity to obtain any type of employment at this time**.

(Claim File). (emphasis added).

On 2/3/26, Dr. Bonnette responded to Dr. Rojhani's 1/20/26 opinions as follows:

> Upon review of Eric's recent Peer Review performed by Dr. Solomon Rojhani, I respectfully disagree with his interpretation of the records provided to him. Most notably with his answers in questions numbered 3 and 4.
>
> In Dr Rojhani's response to question #3, he notes that the functional capacity evaluation performed on 7/7/25 reviewed the patient is 'unable to work full time even in a sedentary capacity due to the inability to walk occasionally, inability to stand for 1 hour and 45 minutes, inability to sit for 6 hours of a day, and inability to sit for 2 hours consistently at a time.' Two paragraphs later, he notes that the patient can sit consistently with frequent postural changes. I do not believe this recommendation is congruent with the patient's functional capacity evaluation nor with his presentation . . .
>
> In Dr. Rojhani's response to question #4, he notes that 'no restrictions and/or limitations were recommended for the time frame in question.' I am not sure what documents, Dr. Rojhani had access to, but I have completed multiple prior Restriction forms that were requested by Lincoln Financial, which I will attach to this document. The Restriction Form provided by Lincoln Financial does not allow for an option of total incapacity, so I marked the sedentary box as it was most applicable.

> Once I received the functional capacity evaluation, I provided an updated narrative review to explain the extent and status of his symptoms and recommendations for restrictions that can be reviewed in the attached document as well.

(Claim File).

Despite substantial evidence supporting disability under the Plan/Policy, LF again denied Mr. Wenninger's claim on 2/13/26, advising as follows:

> Your client's claim was reviewed by a vocational consultant, who completed a transferable skills analysis based on your client's prior work history, educational background, and/or life experience and capacity within the restrictions and limitations outlined by Dr. Rojhani. The analysis showed the following identified occupations:
>
> | **Occupation** | **Monthly Wage** |
> |---|---|
> | Packaging Engineer | $3,267 |
> | Quality-Control Supervisor | $3,089 |
> | Scheduler, Maintenance | $3,059 |
> | Expediter | $4,815 |
>
> **Conclusion**
> We conducted a thorough and independent review of your client's entire claim. In summary, we acknowledge that your client may have continued to experience some symptoms associated with their condition beyond July 18, 2025. **However, the information does not contain *sufficient exam findings, diagnostic test results or other forms of medical documentation* supporting your client's symptoms and impairments remained of such severity that they resulted in restrictions or limitations rendering they are unable to perform the duties of any occupation**.

> Having carefully considered all the information submitted in support of your client's claim, our position remains that proof of your client's continued disability in accordance with the Policy provisions after July 8, 2025 [sic] has not been provided. Therefore, no further benefits are payable beyond July 8, 2025 [sic].

(Claim File). (emphasis added).

Finally, after LF denied Mr. Wenninger's claim appeal on 2/13/26, Mr. Wenninger advised the undersigned of its initial incorrect benefit calculation beginning approximately 7/19/23 through approximately 1/17/25, which caused an underpayment as well as additional tax liabilities that he would not have otherwise incurred. Mr. Wenninger's Complaint details these allegations as well as the additional monies LF owes above and beyond the disability benefits – roughly $10,102.89.

3a) **Defendant's Factual Summary:**

Defendant denies the general allegations of Plaintiff's Complaint and, in response, states that Defendant properly adjudicated Plaintiff's claims for long term disability benefits and life waiver of premium benefits pursuant to the terms and conditions of the applicable LTD Plan and Life Plan documents. Specifically, Defendant contends that its consideration of the relevant medical information, among other evidence, revealed that

Plaintiff did not meet the LTD Plan's and the Life Plan's definition of disability under the terms of the LTD Plan and the Life Plan. Defendant also states that its claims decisions were in accordance with the LTD Plan's and the Life Plan's provisions, legally correct, and neither arbitrary nor capricious.

4) **Legal Issues and Standard of Review:**

Whether LF correctly denied Mr. Wenninger's claims for LTD and extended death benefits under the governing Policies.

The disability and life Policies were delivered in Michigan, effective 1/1/19. Michigan is the governing jurisdiction. De novo is the correct standard of review.

5) **Amendment of Pleadings:**

None anticipated.

6) **Discovery:**

Not applicable.

7) **Electronic Discovery:**

Not applicable.

8) **Settlement and Alternative Dispute Resolution:**

The Parties are planning to facilitate/mediate the case with James Rashid and are in the process of securing dates.

9) **Consent:**

The Parties do not consent to a magistrate conducting any of the proceedings.

10) **Trial:**

Not applicable.

11) **Motions:**

LF will file under seal and serve the Administrative Record by 9/1/26, which Record should encompass all information, records, documentation, electronically stored or otherwise, etc. that has been generated since the inception of Mr. Wenninger's LTD and extended death benefit claims through LF's final 2/13/26 denial.

Pursuant to Fed Rules Civ Proc R 52, the Parties shall file cross-motions for judgment on the administrative record and responses as follows:

- Cross-motions filed by 12/4/26;
- Responses filed by 12/15/26; and
- no replies.

Approved as to form and substance:

s/ Ilana S. Wilenkin (P61710)
Plaintiff's attorney
3000 Northwestern Hwy.,
Ste. 108
Farmington Hills, MI 48334
(248) 932-3505, ext. 323
ilana@lawsmf.com

s/ Iwana Rademaekers
Defendant's attorney
14785 Preston Road, Suite 550
Dallas, TX 75254
(214) 579-9319
iwana@rademaekerslaw.com

Dated: July 10, 2026